The next case is Atchison v. Board of Regents, University of Georgia System, for the appellant. Good morning. Thank you, Judge Anderson. Before I begin my argument, if I may distribute to the panel Exhibit A, which I don't know if it's in front of you, but I wanted to have in front of you during argument. I don't know whether we have Exhibit A or not. What is Exhibit A? Oh, you've got it. We'll look at it. Thank you. Thank you. We saw that already. It's in the record. Thank you. May it please the Court, my name is Amy Weil, and I represent Louis Atchison in this case. What I intend to argue this morning is that the district court erred, both in its determination of adverse action and its determination of causal connection, but also with respect to its anti-interference decision. Judge Batten, who originally had this case as the district court judge assigned to it originally, correctly ruled that Mr. Atchison alleged sufficient facts to support a claim of retaliation under both the ADA and the RA. He observed that the Eleventh Circuit construes the causal connection element broadly so that the plaintiff need merely show the protected activity and the adverse action are not completely unrelated. And then he found, as a matter of fact, that it can be reasonably inferred from the lengthy delay and ultimate denial of readmission that they were related to the persistent complaints that were made by Mr. Atchison, the protests levied at the Georgia TAC officials and the ADOTS program and the individual defendants and the Board of Regents. As such, he made out a prima facie case. Then the case went to Judge May, and she reversed that decision, and she said that they — that Judge Batten essentially was wrong, that based on the evidence that she saw in the record, that Mr. Atchison had not made out those claims. And our argument, as we've argued to this Court in the briefs, is that her decisions were incorrect, both factually and, more importantly, legally, with respect to a refusal to admit. I would like to note just at the outset, Ms. Weil, what issues are properly before us on appeal? There were eight claims to begin with. The district court appeared to grant the motion to dismiss on 5, 6, 7, and 8, finding them abandoned because the plaintiff failed to reply to the motion for their dismissal. What do we have in front of us? The retaliation claim, basically. What exactly are you asking us to review? We're asking you to review both Judge Batten and Judge May's orders. What I intend to argue this morning was Judge May's orders, but they're both in front of you because they have been raised both in the opening brief that was filed pro se by the appellant and then also in my supplemental brief. All right. So what is it that you want to address specifically? Well, this morning, my intention was to argue issues concerning adverse impact, adverse activity, action, causal connection, and interference. With respect to the adverse action, this Court, in Schatz, which we raised in our brief, has held that to establish a promulgation case of retaliation, a plaintiff must show that he engaged in statutorily protected activity, which is not an issue in this case, that he suffered an adverse action, and that the adverse action was causally related to the protected activity. And what is the adverse action? The adverse action in this case is the denial of Mr. Atchison's request for readmission, which was based not on what the officials said were the reasons given, but actually, in fact, based on the animus against him, which is demonstrated in this enormous record of the both that I've submitted to Your Honor this morning, that stapler. And I can go through the facts. But what Judge May did was Judge May said, well, you had to make out a case of material change and conditions of his status as a student in order to make out an adverse action. And, first of all, that's just wrong. I mean, that is not even the standard for employment cases. What happened was the judge relied on the wrong Burlington Supreme Court case. In Carroll, Crawford v. Carroll, this Court made clear that in a retaliation as opposed to a discrimination claim, there's a relaxed standard requiring only a showing of a materially adverse action that might dissuade a reasonable worker from making or supporting a charge of discrimination, and that to satisfy the adverse action element, an employee, in this case a student. So assuming that she used the wrong standard, we would, of course, apply the correct standard. But applying the correct standard with his history of misconduct, it is hard to believe that any reasonable result would be different from this. That gets to the cause, I know. But is that not true? No, Your Honor. If it's not caused, it doesn't matter whether or not it would dissuade a reasonable worker. Well, Your Honor, she also applied the incorrect causal connection standard so that in this case she didn't even look at the evidence to pretext. She didn't even look at anything that opposed what Georgia Tech said. For example, Georgia Tech made the argument that the reason that Mr. Acheson, what his reconsideration petition was denied, was, which is what's before this Court now is reconsideration and his request for reinstatement, readmission, that the defendant argued below and the judge may have found that the reason for it was because he had previous acts of misconduct that had been raised in disciplinary scrutiny. A long history of very serious. Essentially four disciplinary. But the problem with the argument and what Judge May never looked at, in which she completely discounted apparently in her findings, was that the president of the university who made the ultimate decision didn't know anything about that. He was completely unaware of the four disciplinary actions. In his deposition testimony, he testified that this is new information. I didn't realize that he was found responsible for previous occasions. Question, oh, you didn't realize that those four prior incidents had been included in the determination? Answer, this is the first I've seen of this. So we know from his testimony he didn't even know about it. We also know that in her order, Judge May completely ignored, in finding that there was no causal connection, the fact that it was a pretext based on our information about what was in the minds of these people at Georgia Tech. And what we know, we know that they issued, and I have in my brief the one Bolo poster. There were actually two Bolo posters. That here's Mr. Atchison, who has been expelled from the school, and they put a big sign, stay away from him, don't let him on campus. Alert, alert. Bolo, be on the lookout. Like a beware, like a FBI wanted poster. That's one of the facts we put in to show them. It's almost unbelievable to me that a decisionmaker would not know the basis of the prior decisions. And I don't recall that having been raised in your brief, was it? Not in my brief. It was raised below. But the point of his not knowing and that it's hard to believe is that there was so much swirling around. If that was so important, why didn't you put it in your brief so we could have thought about it? Your Honor, I just neglected to note that that was even a fact. This is such an enormous record that when I took on the case, after it had been tried, so I apologize for not seeing that. But in getting prepared for argument, I took the case, I guess, a month. I had about a month to write my brief. It's a big record for me to evaluate everything in a month. And everything else that I'm about to argue is actually in our brief. But this is information that was supposed to be included in the district court's order. When the district court is deciding an important case of somebody's rights under the ADA and whether there's retaliation. Well, the President, if he did not know of the extent of the conduct, he must have known that multiple decisions over years had resulted in, in other words, this reconsideration denial that we are considering now was certainly not the first time Georgia Tech ruled in this regard. It had ruled eight, ten times before, including the Board of Regents several times. He wasn't there for a lot of that. He was pretty new to the program. But would he not know that? According to him, he was unaware of a lot of things that had happened. He didn't say he was not aware of that. Well, he obviously knew it was a reconsideration. He knew there was a reconsideration and he was fully aware of the fact that there had been a cheating alleged to have occurred and that that was why. But he testified that he was not aware of the prior instances of misconduct and it was all new to him. But that's not the only reason why there was a proof of animus, not just the swing line, which we argued in our brief, and the fact that there were the Bolo posters put out, that there were holds put on Mr. Atchison's transcript in a very unusual  way. There would be a hold put on and then, it's in the record, the hold would be lifted and then the hold put back on and the hold would be lifted. And there's testimony that that even Mr. Atchison had asked to have the holds lifted so he could try to apply to other schools. But they would be lifted for such a short period of time that by the time he tried to access his transcript, then they'd be put back on in sort of like a whack-a-mo. He couldn't quite get the schools to be able to look at the transcripts while they  What discrete acts were within the statute of limitations? Pardon? What discrete acts fell within the statute of limitations? Well, for one thing, his — the fact — the basis for his claim is the filing of the complaint, which was within the statute of limitations. The filing of his request for reconsideration, excuse me, which was in the statute of limitations. So can you file a request for reconsideration in perpetuity and say the discrete acts fall within the statute? Well, it depends on what those discrete acts are. And, yes, if, for example, the — yes, you can file a request for reconsideration if it's taken under consideration, which this was in March of 2010. Then that is a discrete act. If that is — What about the earlier ones? The earlier — The earlier complaints and applications for reconsideration. Those earlier — he was sort of going up the chain. That's not what's on appeal right now. Okay. So we're just talking about 10 and forward. We're talking about 2010 and forward. But in order to prove factually what was in the mind of the people at Georgia Tech, reliance on evidence both before and after, if it shows a pattern of conduct, is admissible and should be considered by the district court judge. And we have set out the pattern of conduct. And before I close, I want to point out to the Court that the — Let me ask you about that pattern. As I see it, the only evidence in this case which leans in your direction at all was the President's outburst, which reflects some hostility, perhaps. It seems to me, in light of the totality of the evidence, that that hostility is most likely attributable to his frustration with this plaintiff's Could a reasonable jury find otherwise? Well, first of all, Your Honor, that you're speaking with respect to the defendant's point of view of it. What happened, actually, in this case is the repeated acts of the photo with the stapler, these were all the people who were at Georgia Tech. And all the people at Georgia Tech were putting out the Bolo posters. They were all the people who were talking, apparently for an hour and a half, with the President, according to his deposition testimony, about, let me tell you a little bit about Mr. Atchison. And it was these people, for example, the woman who fished out of the trash can after the test was over, and the professor had, you know, sent it in and gave him a grade. They fish out of the CHI, the head of the ADAPTS program, the director of the Disability Services Program, fishes out of the trash can, and then later is one of the people talking to the President. Why is that a problem? Because she is one of the people who had the discriminatory, retaliatory animus against the plaintiff for having complained about the ADAPTS program. See, he made repeated complaints that her program was not a good program because he tried to take the test and it wasn't quiet, people were talking, and that that was on her under this. And when he filed his request for reconsideration, she was one of the actors that he was having issues with, and she was the one who was talking to the President. But I want to point out before I close that, for reasons that I'm unaware of, the appellees never filed a response to my supplemental brief. And under FRAP 31C, an applee who fails to file a brief will not be heard at oral argument unless the court grants permission. And the purpose of that is to not sandbag the appellant. And we would ask to the court to enforce that rule so that we don't get sandbagged by new information. We'll take that under consideration. Thank you. That motion is overruled. I'm not sure I can pronounce your name. Would you help me? It's Cusimano, Your Honor. All right. May it please the Court, Ellen Cusimano, on behalf of the Board of Regents of the University System of Georgia, as well as its named employees. We're here to ask the Court to affirm summary judgment on both the ADA and RA retaliation claims, as well as the ADA interference claim. However, before I get any further into my argument, I do want to clarify the State's position on what the definition of an adverse action is. I do agree with my colleague that last year in Brathwaite, this Court made it clear that the Supreme Court's decision in Burlington Northern is what controls the definition of an adverse action. We understand that the district court applied the wrong standard. And we understand that what your opponent said is the correct standard. That is correct, Your Honor. And, of course, that is not the standard that the trial court applied. But in Brathwaite, what this court did is it went ahead and it applied the correct Burlington Northern standard. And I see no reason why this Court shouldn't do the same thing here. So with that clarification, I do want to jump into my main arguments. There are several bases for this Court to affirm summary judgment. One is that there was no adverse action. Another is that there was no causation. I want to focus my argument on the lack of causation because I think that's our strongest argument. In order for Mr. Atchison— Is that the only thing before this Court, the summary judgment? Or do we have the dismissals before us too? It's not entirely clear that dismissals is before the Court as well. Mr. Atchison did, before he was appointed counsel, he did mention that in his brief, but his appointed counsel did not mention it in her supplemental brief at all. And so because of that, I would argue that perhaps that argument has— Been abandoned? Has been abandoned, yes, Your Honor. But focusing on the causal connection argument, as this Court knows, Mr. Atchison has the burden of establishing a prima facie case of retaliation. Causation is one of those elements. And he doesn't just have to show any causation. He has to show but for causation according to the Supreme Court's decision in Nassar. And that, of course, is a heightened burden of proof. And essentially what he has to show under that standard is that his request for overturning his expulsion would not have been denied if he had not complained about his accommodations. And he has not provided evidence in the record to support that. We now know that the decision not to overturn his expulsion was made by the Board of Regents Organization and Law Committee. However, Mr. Atchison did not take any discovery to determine the names of the individuals on that committee. He failed to determine what materials that committee considered. He failed to determine why those committee members reached the decision it reached. And most importantly for this case, Mr. Atchison failed to get evidence as to whether those members knew that he had even lodged complaints about his accommodations. And that is a significant omission, because as this Court made clear in 2018 in Jefferson v. Suon, or excuse me, in Clover v. Total System Services in 1999, the plaintiff is the one who has the burden to show that the person making the adverse decision was aware of the plaintiff's protected speech. And again, without any evidence from these committee members, Mr. Atchison cannot possibly show that they knew that he engaged in protected speech and that their decision was based on retaliation. And so for that reason alone, he cannot establish a but-for causal connection and that that itself is sufficient to affirm the lower court's decision. I don't actually remember that argument in your brief. Did you make that argument in your brief? Yes, Your Honor, we did in a general way, just basically saying that the standard is but-for causation and that he hasn't raised it or he hasn't produced any evidence that would meet that standard. I thought your argument was that the extent and the nature of his misconduct was so obvious that it was just absolutely obvious that he was not going to be readmitted and therefore there is no cause, no evidence that the decision was made because of his 5-year-old complaints about his accommodations or even his persistent complaints trying to get the expulsion overruled. I thought that was your argument. Your Honor, we did make that argument, but in a different context. So once Mr. Atchison fails or assuming he proves his prima facie case, the burden then shifts to the Board of Regents to proffer a legitimate nonretaliatory reason, and our argument there was that we do have a legitimate nonretaliatory reason, which is that Mr. Atchison engaged in a long history of personal and academic misconduct that only progressed over time and that that in and of itself is a sufficient, legitimate reason for deciding not to overturn his expulsion. So in other words, we're dealing with a different stage in the analysis. Now, and that also, your Honor, that also ties into our adverse action argument, which I will just hit upon very quickly. To show an adverse action, it has to be materially adverse. And our position here is that there was no materially adverse action against Mr. Atchison under the unique circumstances of this case because Mr. Atchison had exhausted all of the procedures that existed at Georgia Tech and the Board of Regents for appealing his expulsion. His expulsion was denied all of those times. At that point, the process ended, should have ended. But then Mr. Atchison spent the next five years constantly contacting people via email, letters, face-by-face, to ask them to please reconsider his expulsion and readmit him to Georgia Tech. Over those five years, he made at least 11 of those informal requests. They were denied each time. And so essentially what he has done is he has repeatedly asked for the same relief over and over and over again. And our position is that yet another denial of his request after five years of a long line of requests, that is not a materially adverse action in this case. So that is another basis for this Court to uphold summary judgment in favor of the Board of Regents. I think I've gone over causal connection and the lack of causal connection. Let me ask you, how do you respond to your opponent's belated reminding us that the President said he wasn't even aware of this extensive and serious history of misconduct? Well, Your Honor, President Peterson was not a part of the committee that made the decision to uphold his expelment. And so, in other words, he was not a decision-maker. I thought when they granted the extraordinary rehearing, in effect, they granted it so that the new President would have some input. Your Honor, that is not correct. What happened is they — so, additionally, Mr. Axton asked for the Board to reconsider his request. The Board denied that, saying that they wanted President Peterson to have an adequate chance to review the case because under Bylaw 8, only — you can only review decisions made by Presidents. So what they did, they kicked it back to President Peterson. President Peterson testified in his deposition that he was new at this point in time. He did not know anything about this. He testified that he spoke to various people in his office about how to proceed and what the correct procedure was. And they all told him that there is no policy or procedure for reconsidering this kind of request. They all told him that Mr. Axton had exhausted all of his avenues of redress. And so, as a result, Mr. — President Peterson did send a letter to Burns-Newsom saying that tech's position was that they did not think this matter should be reconsidered. But President Peterson's letter was not presented to the Law and Organization Committee. Instead, they conducted their own independent analysis and they reached their own conclusion that the expulsion should not be overturned. So, in other words, they suspended any denial of his request immediately before the last one so that the President could look at it. He looked at it and refused to act. Is that right? That is correct. And then the board took it up at the October meeting. That is correct. Because the chairman of the committee alone has sole direction — has sole discretion whether to take these matters up. So he decided, for whatever reason — we don't know, it's not in the record — he decided to take this matter up at the next Board of Regents meeting. And that is when the Committee on Law — on Organization and Law met and decided to uphold the expulsion. And I think it's significant to note that President Peterson was not a part of that committee. He was not present at that committee. He did not provide a recommendation to that committee. That is true with every single individually named defendant in this case. They were not part of the committee. They did not provide recommendations to the committee. They were not, other than Defendant Newsom, they were not even present when the decision was made. And even as to Defendant Newsom, he testified that his role was confined solely to transferring all the materials to the committee. So he was basically just a conduit pass-through. And so, for those reasons, we really don't think Mr. Atchis can establish causation. He can't establish that the reason his request to upturn his expulsion was denied because of his accommodation complaints. I do want to also turn really quickly to just some hypotheticals. Even assuming that Mr. Atchison makes out his prima facie case, which, of course, our position is that it is not, again, it shifts to the Board of Regents to show a legitimate non-retaliatory reason. It's important to note that this Court has described that burden as exceedingly light. The Board of Regents does not have to actually prove that was its reason. It just has to proffer a reason. And again, here the Board of Regents has proffered that reason based on Mr. Atchison's long history of personal and academic misconduct. As a result, we would ask this Court to affirm summary judgment in favor of the Board of Regents and its named individual employees. Any other questions? Thank you. Ms. Wheel. Your Honor, Apley's argument underscores why this case needs to go back to the district court rather than having the court here decide, because the district court needs to look at the facts and apply them to the correct standard of law. Here we have a letter that was written January 4th, 2011, by Bud Peterson, the president of the university, who concludes that I've reviewed the information. This is to Mr. Atchison. This is in the record, document 166, page 34. Mr. Atchison, I've reviewed the information you submitted to me regarding your expulsion from Georgia Tech. And then it concludes at the bottom, by carefully reviewing the information you provided, I find no compelling reasons to change the decision as a — sorry, it's really little. And as a result, I am upholding the decision. I think there's evidence in the record this letter was not sent to Mr. Atchison, but there's — I'm aware of the fact that the letter was written. And there's cc'd to Smith, Schaffer, and Stein, other people involved in the administration of Georgia Tech. So I find it impossible to believe that Peterson, who they held this up for, and as the Apley has explained, he needed to make a decision in order for it to go to the Board of Regents. It's impossible to believe he didn't weigh in on this decision, number one. So, really, this case needs to go back to the district court, for the district court to look at these facts and apply — So accepting as true that he said in his deposition that he was not familiar with this long history of misconduct, according to what your opponent just said, he was — he did consult with his staff. And they told him, in effect, that this decision had been made several times, many times before, and that Atchison had exhausted his remedies many times before. Is that not true? I'm not aware of the fact that anything other than he consulted with his staff. They talked for like an hour and a half about Mr. Atchison. I am certain that it came up in there that he's been making complaints about the ADAP testing. And I really want to make it clear — And it also — that happened before the alleged comments about the President, which I mentioned might indicate hostility. Is that not true? This letter was written January 4, 2011, where he says he's turned it down. Yeah. And that meeting was July 2011. In the summer. Right. Of 2011. Right, right. Correct. So his — and we know that he talked to the people who were involved in the complaints that were made. So we would tell Your Honor that it's not so obvious that the misconduct, the extent of the misconduct that had previously wasn't been talked about, was not part of the entire retaliation. And I point out to Your Honor that much of the misconduct that were the basis for those prior disciplinary proceedings related to his disability. That was the whole point, is that, for example, he was in the library. And one of the complaints was he was in the library, got into a thing with some of the students because he was asking them to be quiet. And nobody in the library would make him be quiet, make the people be quiet. And then he got into a thing with the students. That was related to his disability. That was the same thing as what was happening in the ADAPTS. And then he said he was going to cut the head off of that person. I don't remember that exact quote, but, Your Honor, I know that he was very upset because quiet and studying was really important to him. He was on the dean's list once, overcoming his disabilities. So we would point out also with respect to his roommate. They put him in a room with a basketball player who was 6'4". He was terrified of him. They got into a thing. I would be, too. All of this, Your Honor, was swirling around Mr. Acheson. And when the Court didn't even make a pretext evaluation because she didn't think she had to, she thought it was over with, none of his information came in, none of his facts. So this needs to go back under a correct standard for both adverse action and for causal connection. Let me apologize to you. I cut you off when you started talking about adverse action. And then I was not astute enough to stop your opponent when she talked about adverse action. So I'd like to give you an opportunity now to say whatever you think we ought to hear about adverse action. Thank you, Your Honor. We do understand that the district court made the wrong, used the wrong standard. Right. And if the Court had applied the proper standard, she could have gone to shots, for example, where the plaintiff in that case, where the Court said that a prima facie case of retaliation in a public services context is what we have here, can be established by proof that, quote, some type of action occurred that sufficiently qualifies as adverse action under the circumstances of the case. So you have to look at the individual case. And that a reasonable person in his position would view the action in question as adverse. That's what we're looking at. We're not looking at some heightened standard or higher standard. This is a pretty low standard. In that case, the adverse action was a public disclosure of information that was embarrassing. In this case, look at all the embarrassment to Mr. Atchison, the bolo posters, the screaming and cussing at him while he was there, you know, he was listening to it. There was so much hostility toward him, unless there's actually a judge or, in our case, there should be a jury looking at this and saying, what really was the motivation? You can't do it without looking at the record and looking at the facts and allowing the plaintiff, in this case Mr. Atchison, the opportunity to present it. As I understand it, the complaint here on appeal is the refusal of the Board of Regents to reconsider that final time in October of 2011. And taking 626 days to do it. That delay, there has never been an explanation. Right. For why that took so long and why they didn't just send him the letter. It's hard for me to conceive how that final denial and even the delay in that denial could dissuade a reasonable person from making complaints when he made all of these complaints before. And he was gratuitously allowed to make an extraordinary petition for rehearing to the Board. And then that final decision of the Board that we are at issue here, it's hard for me to see how that could persuade or dissuade a reasonable person from making further attempts. In fact, the fact that they gratuitously allowed that last reconsideration would suggest just the opposite, wouldn't it? No, Your Honor. And the reason why is because during this entire period of time, what's in the head of Georgia Tech is being exhibited by the conduct they display. For example, it wasn't until 2010, which was after he originally filed his request for reconsideration, that the holds were lifted. But, you know, they were up and down on the holds. Up one minute, they're off, and then they're down. So, you know, they're toying with him. This photograph, I cannot tell you enough how that explains what's going on in the minds. They're thinking, he's just a pain. And most of his complaints, like 99% of his complaints to Georgia Tech, were entirely related to his disability. On that staple, is it not true that there's no evidence at all that any of the decision makers had any idea about that television program? I forget the name of it, Office something. Your Honor, whoever took that picture, whoever was involved, that's Georgia Tech administration. Georgia Tech was sued. It's not just the defendants, and proving each individual defendant had anything to do with that stapler. It was Georgia Tech. Why would they do that? Well, they knew about him, how they knew about him. Georgia Tech knew about him. They knew why he's asking for these records. But there's no evidence at all that any decision maker knew about that television program and the suggestion there that the party was mentally unstable. Is that not correct? Well, the decision maker was Georgia Tech and the Board of Regents. There's no evidence anybody knew, is there, in this record? Well, Your Honor, the reason I wanted you to see the photographs is that if I just say there's a photograph, you know, it happened to have a red stapler, you could think, well, eh. But, you know, it happened by accident. Somebody put that red stapler in front of those stacks to humiliate and I would argue, Your Honor, dissuade. Once you're over and over humiliated by a university, you think that you're going to go away. And that's the whole point. Thinking you're going to go away is the retaliation. I think we understand. Any questions? I would like to acknowledge that you were appointed to take this case pro bono and as you always do, you've done an excellent job and the court is very appreciative. Thank you, Your Honor. Next case is number 19.